## Wytheville.

## TOOD AND ELIJAH CAMPBELL V. COMMONWEALTH.

### June 29, 1921.

1. HOMICIDE—*Manslaughter—Aiders and Abettors.*—In the instant case, defendants contended that there could be no principal in the second degree where the offense is manslaughter, the argument being that, as the crime is committed in sudden heat of passion and without premeditation or malice, one present at its commission, but not actually participating in its perpetration, cannot aid or abet the principal actor.

   *Held:* That this was a mistaken view. The authorities generally fully support the proposition that there may be aiders and abettors in manslaughter.

2. ACCOMPLICES AND ACCESSORIES—*Homicide—Manslaughter—Aiders and Abettors.*—While neither of defendants in a prosecution for murder may have premeditated the death of deceased, yet where they went with a joint unlawful purpose of attacking deceased, and deceased was killed in a pistol duel developing out of such attack, the death of deceased was not an improbable consequence of the fight which defendants clearly contemplated, and which the jury, upon ample testimony, evidently believed they precipitated. This being true, it matters not that neither of the defendants intended to kill deceased, and a verdict of voluntary manslaughter is warranted.

3. HOMICIDE—*Self-Defense—Instructions.*—In a prosecution for homicide, the trial court gave the following instruction: "The necessity relied upon to justify killing must not arise out of the prisoners' own misconduct; and if the jury shall believe from the evidence that the prisoners, or either of them, assaulted the deceased, and thereby brought about the necessity of killing the deceased, should they believe there was such necessity, then the prisoners cannot justify the killing of the deceased by a plea of necessity, unless they were without fault in bringing that necessity upon themselves."

   *Held:* That the instruction was not misleading as directing the jury that if there had been any misconduct on the part of the defendants, whether such misconduct had reference to the deceased or not, then the defendants could not rely upon the plea

of necessity. When read as a whole, the instruction plainly meant that the misconduct referred to was an assault by the defendants upon the deceased which brought about the necessity relied upon by them.

4. HOMICIDE—*Self-Defense—Instructions.*—The instruction quoted in the preceding syllabus was also objected to on the ground that it ought to have told the jury that the assault relied upon to defeat the plea of necessity must have been shown by the evidence beyond all reasonable doubt to have been an unlawful assault.

*Held:* That this objection was unfounded, as the jury had been told in another instruction that the law presumed accused to be innocent until proved guilty beyond all reasonable doubt, and the language of the instruction complained of clearly indicated that the court had reference to an unlawful assault by the defendants.

Error to a judgment of the Circuit Court of Lee county.

*Affirmed.*

The opinion states the case.

*J. C. Noel* and *E. W. Pennington,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

Tood and Elijah Campbell were jointly indicted and tried for the murder of Moss Chadwell. The jury found them guilty of voluntary manslaughter, fixing Tood Campbell's punishment at four years, and Elijah Campbell's at two years, in the penitentiary. The court sentenced them accordingly, and they bring the case here for review.

Many witnesses were examined, and there was a sharp conflict of testimony upon some points; but, from the stand-

point of the Commonwealth and as supporting the verdict, the evidence either showed or materially tended to show the following facts: Tood Campbell, his wife, their son, Elijah, and Moss Chadwell, along with a number of other persons, all residents of Lee county, went by train from Ewing, in that county, to Middlesboro, Ky., on July 4, 1919, to attend a holiday celebration. While the crowd was waiting for a train upon which to return from Middlesboro to Ewing, Elijah Campbell, who appeared to be drinking, made an improper and offensive remark with reference to some of the girls in the party. This was resented by Moss Chadwell, and there was a brief but angry altercation between the two. Elijah Campbell was not armed, but he owned a .38-calibre Colt's revolver, which he had brought with him and had temporarily turned over to a relative residing at Middlesboro, because he feared arrest by the local police for carrying a concealed weapon. This relative had, with his knowledge, placed the pistol in a box with some other things, and had delivered the box to Elijah Campbell's mother. When the train arrived at Middlesboro, all of the above mentioned persons got aboard, and Mrs. Campbell placed the box containing the pistol on the seat occupied by herself and her husband. After the train left Middlesboro, the altercation between Elijah Campbell and Moss Chadwell was renewed, and they were separated by the conductor. Elijah Campbell then went into another car where his father and mother were seated, and asked for the pistol, but his father refused to let him have it. At some time during the return trip, Elijah Campbell was heard to make some very violent threats as to what he intended to do to Moss Chadwell when he got at him. Shortly before the train reached Ewing, some one came to Tood Campbell, and, according to his testimony, said: "Some one had jumped on Elijah again out there." It is to be noted that this

was after the conductor had separated Elijah Campbell and Moss Chadwell, and after the former had asked for the pistol; and it is fairly plain from the evidence that the quarrel had not thereafter been renewed and that Elijah Campbell and Moss Chadwell had not again seen each other, so that the above quotation from Tood Campbell's testimony probably did not commend itself to the credulity of the jury. However this may be, Tood Campbell, at this juncture, pocketed the pistol and went in search of Elijah. Having found him, the two went out on the platform of the coach. They were then nearing Ewing. Elijah was crying and complaining that some one had called him a vile name, and said that "one of us has to die." Tood Campbell said to him: "Keep quiet. If there is any fighting to be done, I will do it."

Almost immediately after the passengers alighted from the train at Ewing, Tood and Elijah Campbell became engaged in a fight with Moss Chadwell, which quickly developed into a pistol duel between one of the Campbells and Chadwell. Several shots were fired on both sides, but the only one which took effect struck Chadwell and caused his death. The jury evidently believed that the Campbells were the aggressors, and that Tood Campbell did the shooting on his side of the affray; and while there was a conflict of evidence upon both of these points, the verdict settles the conflict.

It is clear that only one of the Campbells shot Chadwell, and it may be conceded, without so deciding, that if the jury could properly find both parties guilty of that offense, one of them must have been regarded as a principal in the first degree and the other as a principal in the second degree.

[1-2] 1. The defendants contend, as the basis of their first assignment of error, that there can be no principal in the second degree where the offense is manslaughter. The argument here is that as this crime is committed in sudden

heat of passion, and without premeditation or malice, one present at its commission but not actually participating in its perpetration cannot aid or abet the principal actor. This is a mistaken view. It may well be that, as the jury found, neither of the Campbells premeditated the death of Chadwell, but that they went with the joint unlawful purpose of attacking him. What actually happened was not an improbable consequence of the fight which they clearly contemplated, and which the jury, upon ample testimony, evidently believed they precipitated. This being true, it matters not that neither of the defendants intended to kill Chadwell. This subject is fully discussed in the case of *Flynn Brown* v. *Commonwealth, ante,* p. 733, 107 S. E. 809, decided today; and the opinion handed down therein renders it unnecessary to further extend the discussion of this branch of the instant case. It may be added, however, that while there appears to be no Virginia decision directly upon the point, the authorities generally fully support the proposition that there may be aiders and abettors in manslaughter. This is conceded by counsel for defendants. Sec. 21 Cyc. 682, and cases cited.

[3] 2. The only other assignment of error relied on is that the court was wrong in giving the following instruction for the Commonwealth:

"The court instructs the jury that on a trial for murder the law of self defense is the law of necessity and the necessity relied upon to justify killing must not arise out of the prisoners' own misconduct; and if the jury shall believe from the evidence that the prisoners, or either of them, assaulted the deceased, and thereby brought about the necessity of killing the deceased, should they believe there was such necessity, then the prisoners cannot justify the killing of the deceased by a plea of necessity, unless they were without fault in bringing that necessity upon themselves."

94

It is claimed that this instruction "in effect told the jury that if there was any misconduct of the defendants or either of them, of any kind, whether such misconduct had reference to the deceased or not, then the defendants could not rely upon the plea of necessity," and from this manifestly erroneous interpretation of the instruction it is argued that the jury might have been led to think that the court meant to say that the possession of a pistol by the defendants, or the improper remarks of one of them with reference to some of the girls in the party, was such "misconduct" as to cut off the plea of self defense. The language of the instruction readily answers this contention. When read as a whole, it plainly meant, and the jury could only have understood it to mean, that the misconduct referred to was an assault by the defendants upon the deceased which "brought about the necessity," relied upon by them.

[4] The instruction is further complained of on the ground that it ought to have told the jury that the defendants' assault upon the deceased, in order to defeat the plea of necessity, must have been shown by the evidence "beyond all reasonable doubt" to have been "an unlawful assault." Instruction No. 1, given for the defendants, told the jury "that the law presumes the accused to be innocent until they are proved guilty beyond all reasonable doubt, and if there is upon the minds of the jury any reasonable doubt of the guilt of the accused, the law makes it their duty to acquit them; * * * to warrant their conviction their guilt must be proved so clearly * * as to exclude every hypothesis of their innocence." With this instruction before them, there was no possible danger that the jury would misunderstand the degree of proof required, upon all material points, to warrant a conviction; and the language of the instruction complained of (No. 11 quoted above) clearly indicates that the court had reference to "an unlawful assault" by the

defendants.    It could not, as contended by counsel for defendants, have been understood as referring to an assault by defendants which they might have been forced to make in defense of themselves.

Nor is there any merit in the further contention that instruction No. 11 ignored the defendants' evidence tending to show that the deceased made the first assault upon the defendants.    Their theory in this respect was fully presented to the jury in another instruction, and the two were in no way conflicting.

There is no error in the judgment, and it is affirmed.

*Affirmed.*